COURT OF APPEALS
DECISION
DATED AND FILED

April 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1655**

STATE OF WISCONSIN

Cir. Ct. No. 2020TP5

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.C., A PERSON UNDER THE AGE OF 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

E.C.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] E.C. appeals the circuit court's order terminating his parental rights to K.C. He contends that his constitutional rights were violated because he was not included in the child in need of protection or services (CHIPS) proceedings involving K.C. or this termination of parental rights (TPR) proceeding prior to the time he was determined to be the father of K.C., his nonmarital child. The circuit court found that E.C. had abandoned K.C. and rejected his good cause challenge. Because we conclude that E.C. had no constitutionally protected liberty interest in his parental rights and he received the process he was due, we affirm.

## BACKGROUND

¶2 The facts relevant to the resolution of this appeal are undisputed. On March 9, 2017, the Manitowoc County Department of Health and Human Services filed a petition for child in need of protection or services for the unborn child of N.G. Because N.G., the mother of K.C., was married to J.G. at the time of K.C.'s birth, J.G. was the presumed father of K.C.[2] K.C. was born on April 3, 2017, and on May 5, 2017, the circuit court entered a temporary physical custody order placing her in the care of her maternal grandmother.

¶3 On June 9, 2017, the circuit court held a hearing at which it found K.C. to be a child in need of protection or services and entered a dispositional

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] WISCONSIN STAT. § 891.41 states in relevant part:

> (1) A man is presumed to be the natural father of a child if any of the following applies: (a) He and the child's natural mother are or have been married to each other and the child is conceived or born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties.

order continuing K.C.'s placement outside the home of N.G. and J.G. and with K.C.'s grandmother. TPR warnings were attached to the dispositional order and explained to N.G. at the hearing. Neither J.G. nor E.C. were present at the June 9 hearing. Though E.C. had been alleged to be K.C.'s father since before she was born, E.C. was not included in the CHIPS proceeding and thus did not receive the dispositional order or TPR warnings. In December 2017, venue for the CHIPS proceeding was transferred from Manitowoc County to Sheboygan County.

¶4    On August 13, 2018, the Sheboygan County Department of Health and Human Services (the County) filed another CHIPS petition, and on December 14, 2018, a CHIPS dispositional order was entered continuing K.C.'s placement outside the home of N.G. and J.G. E.C. was not included in this second CHIPS proceeding.

¶5    On April 15, 2020, the County filed a petition seeking to terminate N.G.'s and J.G.'s parental rights.

¶6    On October 7, 2020, the marital presumption that J.G. was K.C.'s father was overcome in a separate Sheboygan County legal proceeding.

¶7    On October 23, 2020, the County filed and served an amended TPR petition, naming E.C. as a party, seeking to terminate N.G. and E.C.'s parental rights, and identifying E.C. as an "alleged" father and K.C. as a nonmarital child.[3] The County alleged two grounds for termination against E.C.: (1) abandonment

---

[3] The termination of N.G.'s parental rights is not before this court in this appeal. J.G. was no longer included in the proceeding after the marital presumption was overcome and the amended TPR petition was filed on October 23, 2020.

under WIS. STAT. § 48.415(1)(a)3.[4]; and (2) failure to assume parental responsibility under § 48.415(6)(a). The County did not assert the continuation of the CHIPS proceeding as a basis for termination of E.C.'s parental rights. *See* § 48.415(2).

¶8     The amended petition alleged that K.C. was removed from N.G.'s care in May 2017 and that she had been placed with foster parents in November 2017, where she remained up to the time of the amended petition. The County alleged that E.C. knew that K.C. was in foster care and had no contact with K.C. over the past three years.

¶9     At the first hearing on the amended petition, E.C. was advised of his rights to consult with an attorney and contest the petition. Once E.C. had counsel, the court asked E.C. if he wanted a trial by jury. Before E.C. became a party, the circuit court delayed the proceeding so that E.C. could exercise whatever rights he had in the event the marital presumption was overcome.

¶10     The County moved for summary judgment. By that time, based on DNA test results, E.C. was determined to be the biological father of K.C. The undisputed evidence established that E.C. had failed to visit or communicate with

---

[4] WISCONSIN STAT. § 48.415(1)(a)3. states that abandonment shall be established by proving that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer." Under § 48.415(1)(b):

> Incidental contact between parent and child shall not preclude the court from finding that the parent has failed to visit or communicate with the child under par. (a)2. or 3. The time periods under par. (a)2. or 3. shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child.

K.C. since November 15, 2017. E.C. knew that K.C. was initially placed with the child's maternal grandmother and that she had later been placed in a foster home because he had communication with the County and he attended a CHIPS hearing on August 8, 2018.

¶11 In addition, E.C. failed to provide any facts to show that he provided for K.C. financially and emotionally or that he was involved in providing for K.C.'s daily needs.[5] E.C. did not file a declaration of parental interest. E.C. did write a letter asking Sheboygan County social workers to help him establish paternity, but failed to respond to the County's repeated efforts encouraging him to establish paternity (in February, May, and June of 2018). Ultimately, there are no facts to show that E.C. took legal steps to assert his paternity until K.C. was more than a year old.

¶12 The circuit court rejected E.C.'s "good cause" defense—that factors beyond his control prevented him from communicating or visiting K.C.[6] Specifically, the court rejected E.C.'s argument that the failure to include him in the CHIPS proceeding denied him the opportunity to visit or communicate with K.C. The court noted that E.C. was not subject to the CHIPS order and that no other court order prohibited him from communicating with K.C. After the marital presumption was overcome in October 2020, E.C. still failed to communicate with

---

[5] E.C. contends that he assisted N.G. during her pregnancy and assisted with K.C. after she was born in April 2017. However, it is undisputed that he was incarcerated as of April 28, 2017, at which point he stopped communicating with the Manitowoc County Department of Health and Human Services.

[6] The statutory ground for abandonment contains a "good cause" affirmative defense that may be established upon proof by a preponderance of evidence that the parent had good cause for failing to visit the child, or had good cause for failing to communicate with the child and, if the child is an infant, that the parent communicated about the child with the person having custody of the child or had good cause for failing to communicate about the child with the person having custody of the child. WIS. STAT. § 48.415(1)(c).

K.C. at any point up to the hearing on the summary judgment motion on April 5, 2021, a period longer than six months. The circuit court also found that nothing prevented E.C. from communicating with the foster parents, asking to see the child, or "even just send[ing] her a card or a gift."

¶13    Based upon these undisputed facts, the circuit court found grounds for abandonment for more than six months under WIS. STAT. § 48.415(1)(a)3. In a subsequent hearing, the court determined that it was in K.C's best interest to have E.C.'s parental rights terminated. On May 4, 2021, four years after K.C. was removed from N.G.'s care, the court terminated E.C.'s parental rights.

¶14    In a post-termination motion, E.C. sharpened his challenge to termination based on his contention that he should have been included in the CHIPS proceeding. At a hearing on the motion, the circuit court noted that the grounds for abandonment under WIS. STAT. § 48.415(1)(a)3. were not related to the proceeding in which K.C. was determined to be a child in need of protection or services. The CHIPS disposition was not an element of abandonment in the case. The court reiterated that the grounds for abandonment were undisputed and that nothing prevented E.C. from communicating or visiting K.C.

¶15    E.C. appeals.

## DISCUSSION

¶16    On appeal, E.C. invokes the same facts that he contended below constituted good cause under WIS. STAT. § 48.415(1)(c), but here he reframes them in a constitutional context. He argues that as the biological father of K.C., he had a constitutionally protected liberty interest in a relationship with her that was terminated without due process in violation of the Fourteenth Amendment. E.C.

contends that the finding of abandonment was unconstitutional because he was not allowed to participate in the CHIPS proceedings, and thus he was not afforded certain procedural protections. Specifically, E.C. contends that he, rather than J.G., should have received copies of the CHIPS dispositional orders, with the conditions for return and TPR warnings. Had E.C. been allowed to participate in the CHIPS proceedings, he argues, he would have been able to visit K.C. and avail himself of services that might later have precluded a finding of abandonment. Instead, his exclusion from the CHIPS proceedings prevented him from contacting K.C., which created the grounds for abandonment later used to terminate his parental rights. He also argues, for the first time on appeal, that his due process rights were violated in the TPR proceeding because he was not included in that proceeding before the marital presumption was overcome. We reject E.C.'s challenges.

*Standard of Review*

¶17    E.C.'s claims present questions of constitutional and statutory interpretation. Whether a parent has made a showing of a constitutionally protected liberty interest in his parental connection to his child is a question of constitutional fact we review de novo. *See **Lehr v. Robertson***, 463 U.S. 248, 261 (1983); ***W.W.W. v. M.C.S.***, 161 Wis. 2d 1015, 1026, 468 N.W.2d 719 (1991). The interpretation of statutes and their application to uncontested facts are also questions of law we review independently. ***VanCleve v. City of Marinette***, 2003 WI 2, ¶17, 258 Wis. 2d 80, 655 N.W.2d 113.

*E.C.'s rights*

¶18    In order to determine what process is necessary in a termination of parental rights proceeding, we must first assess the "precise nature of the private

interest" that is at issue. *Lehr*, 463 U.S. at 256. Thus, we first address whether E.C. had a constitutionally protected liberty interest in his parental relationship with K.C. E.C.'s argument rests on the premise that his biological connection to K.C. gave rise to a constitutionally protected liberty interest. That premise is contrary to well-established precedent.

¶19   In *W.W.W.*, the Wisconsin Supreme Court adopted the reasoning developed by the United States Supreme Court in a line of cases analyzing parental rights, which linked the existence of a protected liberty interest to the level of commitment and responsibility that a putative father assumes towards his child. *W.W.W.*, 161 Wis. 2d at 1026-27 (*citing **Michael H. v. Gerald D.***, 491 U.S. 110 (1989); *Lehr*, 463 U.S. 248; ***Caban v. Mohammed***, 441 U.S. 380 (1979); ***Quilloin v. Walcott***, 434 U.S. 246 (1978); and ***Stanley v. Illinois***, 405 U.S. 645 (1972)); *see also **Randy A.J. v. Norma I.J.***, 2004 WI 41, ¶¶16-20, 270 Wis. 2d 384, 677 N.W.2d 630; ***L.K. v. B.B.***, 113 Wis. 2d 429, 447-48, 335 N.W.2d 846 (1983).

¶20   As the United States Supreme Court and the Wisconsin Supreme Court have made clear, a biological link to a child does not, by itself, give rise to a constitutionally protected liberty interest in a putative father's paternity. *See **Lehr***, 463 U.S. at 261; *W.W.W.*, 161 Wis. 2d at 1031-32. Rather, the liberty interest arises only if the putative father has established an actual relationship with the child and assumes parental responsibility for the child. *W.W.W.*, 161 Wis. 2d at 1031-32. Minimal contact with a child is insufficient to establish a liberty interest in paternity. *See **id.*** at 1029.

¶21   As explained by the United States Supreme Court:

> The difference between the developed parent-child relationship that was implicated in *Stanley* and *Caban*, and the potential relationship involved in *Quilloin* and [*Lehr*], is both clear and significant. When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child,"… his interest in personal contact with his child acquires substantial protection under the due process clause. … But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. "[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children as well as from the fact of blood relationship."

*Lehr*, 463 U.S. at 261 (second, third, and fourth alterations in original; citations omitted).

¶22   In *Randy A.J.*, our supreme court determined that a putative father, Brendan, did not have a constitutionally protected liberty interest in his putative paternity despite tests showing a 99.99% probability that he was the child's biological father because he had not established a "substantial relationship" with the child. *Randy A.J.*, 270 Wis. 2d 384, ¶¶2, 19-20. The child's mother had kept secret from her husband the fact that she and Brendan had an affair while she was married. *Id.*, ¶3. The court found Brendan failed to establish a "substantial relationship" with his child because he did not take affirmative steps to assume parental responsibilities. *Id.*, ¶¶19-20. Specifically, Brendan took no steps to establish paternity until the child was fifteen months old, he did not provide for the child's emotional or financial support, and he was uninvolved in providing for the child's daily needs. *Id.* Based on those facts, the court concluded that Brendan had no constitutionally protected liberty interest in maintaining his parental status to the child. *Id.*

¶23     Here, the facts supporting the circuit court's determination that E.C. had abandoned K.C. also, as in ***Randy A.J.***, establish that he lacks a "substantial relationship" with her.  There are no facts to show that E.C. provided for K.C. financially and emotionally or was involved in providing for K.C.'s daily needs. He took no legal steps to assert his paternity until K.C. was over a year old.  E.C. knew that K.C. was first placed with her maternal grandmother, and shortly thereafter and for several years up through the termination proceeding, with foster parents.  The circuit court found that nothing prevented him from communicating with the foster parents, asking to see the child, or even "just send[ing] her a card or a gift."  E.C. does not dispute that he failed to visit or communicate with K.C. since November 2017.

¶24     Nevertheless, E.C. points to the fact that he was told that the County could not initiate contact between him and K.C. before a determination that the marital presumption was overcome.  He also points to a notation in the minutes of a hearing in the CHIPS proceeding that he had no rights to K.C. at that time.  As did the circuit court, we find these facts unavailing.  That E.C. had not yet overcome the marital presumption did not preclude him from initiating contact with K.C.[7]  As the circuit court noted, "[E.C.] cannot blame the Department for his lack of initiative in communicating with the child" and waiting to establish paternity.  E.C. points to no facts to show that he attempted to and was prevented from visiting or communicating with K.C. and establishing a substantial relationship with her.

---

[7] The minutes from the June 9, 2017 hearing upon which E.C. relies stated that he had no rights until the marital presumption was overcome.  We agree with the circuit court that these minutes did not constitute a judicial order preventing him from having contact with K.C.  The minutes merely reflected the legal status of E.C. in regard to K.C.

10

¶25   Seeking to show that the court erred in denying his "good cause" defense based on factors beyond his control, E.C. contends that, statutorily, he should have been involved in the CHIPS proceeding prior to October 7, 2020, when the marital presumption was overcome.  We disagree.

¶26   As the circuit court noted, the grounds for abandonment under WIS. STAT. § 48.415(1)(a)3. were *not* related to the proceeding in which K.C. was determined to be a child in need of protection and services.  The CHIPS disposition was *not* an element of abandonment in this case.[8]  E.C. provides no basis for, nor does he appear to be pursuing, a collateral attack on the earlier CHIPS proceedings.  Rather, he repeats his contention that the failure to include him in the CHIPS proceedings provides "good cause" for his failure to establish a substantial relationship with K.C.

¶27   We reject this argument for two reasons.  First, as discussed above, nothing about the CHIPS proceedings, or the fact that E.C. was not involved, precluded E.C. from reaching out to visit and communicate with K.C.

¶28   Second, we do not agree that E.C. was entitled to receive the CHIPS dispositional orders, TPR warnings, and conditions for return.  Under WIS. STAT. § 48.02(13) the word "parent" means "a biological parent," but a man is presumed to be the biological father of a child conceived or born after marriage to the child's natural mother.  *See* WIS. STAT. § 891.41(1)(a).  Thus, during the CHIPS proceedings in 2017 and 2018, K.C. was presumed to be the marital child of N.G. and J.G.  This presumption was not overcome during the CHIPS proceedings.

_____

[8] Continuing need of protection or services is a ground for abandonment under WIS. STAT. § 48.415(2), but as we have already noted, the County did not assert, and the circuit court did not find, grounds for abandonment under this subsection.

Thus, E.C. has not shown that he was entitled to be included in the CHIPS proceedings. *See* WIS. STAT. § 48.27(3)(b)1.b. (requiring notice of CHIPS petition to be given to "person alleged to the court to be the father of the child" only "if the child is a nonmarital child").

¶29    We further note that "parent" also includes a person conclusively determined from genetic test results to be the father, which did not occur until after the CHIPS dispositional orders were entered. *See* WIS. STAT. § 767.804. E.C. has not provided any other statutory basis for inclusion, such as filing a declaration of parental interest. *See* WIS. STAT. § 48.27(5) (limiting persons that court must attempt to provide notice of CHIPS proceeding to: (1) "any person who has filed a declaration of paternal interest;" (2) "any person conclusively determined from genetic test results" to be the child's father; (3) "any person who has acknowledged paternity of the child under [WIS. STAT. §] 767.805(1);" and (4) "any person who has been adjudged" to be the child's father in a judicial proceeding and has not had parental rights terminated); WIS. STAT. § 48.355(2)(d) (putative parent not included in list of persons who are to receive copy of dispositional order); WIS. STAT. § 48.356 (imposing duty to warn of grounds for termination of parental rights only on parents who appear in court).

¶30    Likewise, as regards an argument E.C. makes for the first time on appeal, the County did not err by not including E.C. in the TPR proceeding until the marital presumption was overcome. *See* WIS. STAT. § 48.42(2)(b)2. (service of TPR petition on "person…alleged to the court to be the father of the child" only required if "the child is a nonmarital child").[9] E.C. fails to develop an argument

---

[9] E.C. fails to discuss the applicable statutes in any meaningful way, including WIS. STAT. § 48.42(2m)(b), which provides that, absent application of § 48.42(2)(b)2., E.C. lacked standing.

that the County erred by declining to include him before that point, or to explain how or why the County could seek to terminate his rights before the presumption was overcome and/or before he was conclusively determined to be the natural father.

¶31 In sum, E.C. failed to establish a substantial relationship with K.C. Outside of filing a paternity action more than a year after K.C.'s birth, E.C. took no other affirmative steps to assume parental responsibility for K.C. E.C. does not have a constitutionally protected liberty interest in his putative paternity and thus the process E.C. was due was purely statutory. As the Wisconsin Supreme Court has made clear, a father may have his parental rights terminated based on periods of abandonment that occurred prior to his official adjudication as the child's biological father. *State v. James P.*, 2005 WI 80, 281 Wis. 2d 685, 698 N.W.2d 95. E.C. has failed to show that either his constitutional or statutory rights were violated.

## CONCLUSION

¶32 E.C.'s parental rights did not rise to the level of a constitutionally protected liberty interest, and he received all the process he was due after the marital presumption was overcome in the proceeding where statutory grounds to terminate his parental rights were established.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.