STARK, P.J.
*562 ¶1 B.P. and T.F. appeal partial summary judgment orders finding that grounds exist to terminate their parental rights. The circuit court concluded, under WIS. STAT. § 48.415(1)(a)3. (2017-18),[1] that B.P. and T.F. each abandoned their daughter, Allie.[2]
*563 ¶2 T.F. alleges the circuit court erred in concluding the Brown County Human Services Department (the Department) properly pleaded that she abandoned Allie under WIS. STAT. § 48.415(1)(a)3. (hereinafter, "subd. 3."). She argues the Department failed to state a claim for which relief could be granted because it pleaded a legally inapplicable ground for the termination of her parental rights. Specifically, T.F. contends that "[i]f the government seeks to terminate a parent's rights on grounds of abandonment in a case where an out-of-home [Child in Need of Protection or Services (CHIPS) ] order is in place," it is limited to proceeding under § 48.415(1)(a)2. (hereinafter, "subd. 2."), which specifically references such cases, and it may not proceed under subd. 3., which contains no such reference. In addition, T.F. argues that subd. 3.'s abandonment ground was not applicable because *563 one of its elements-that the child was "left" by a parent with another person-cannot be met given that Allie was involuntarily removed from T.F.'s home pursuant to a CHIPS order. T.F. also contends that the Department's petition to terminate her parental rights under the subd. 3. abandonment ground violates her constitutional right to equal protection. Finally, both T.F. and B.P. allege the court erred by granting the Department's partial summary judgment motion because genuine issues of material fact exist as to their statutory good cause defenses for abandoning Allie.
¶3 We conclude that in a termination of parental rights (TPR) action, WIS. STAT. § 48.415(1)(a) 's plain language permits the Department to plead any factually *564 and legally applicable statutory basis for abandonment. Therefore, the Department was not limited to seeking termination of T.F.'s and B.P.'s parental rights under subd. 2., despite the fact that Allie was placed out of each parent's home pursuant to a CHIPS order. We further conclude that the involuntary placement of a child pursuant to an out-of-home CHIPS order can satisfy subd. 3.'s "has been left" element. We decline to consider T.F.'s equal protection argument because she did not raise this claim in the circuit court and failed to serve the Wisconsin Attorney General with notice that she claims subd. 3. is unconstitutional when applied to her in this instance. However, we do conclude that T.F.'s good cause defense was not rendered irrelevant by application of subd. 3. Accordingly, we hold the circuit court properly permitted the Department to seek termination of T.F.'s and B.P.'s parental rights under subd. 3.
¶4 We further affirm the circuit court's grant of the Department's partial summary judgment motion against B.P. because he failed to raise sufficient issues of material fact regarding his good cause defense for abandoning Allie so as to warrant a fact-finding hearing. However, we determine the circuit court erred in granting partial summary judgment against T.F. because material questions of fact exist as to her good cause defense for abandoning Allie. Accordingly, we reverse the circuit court's grant of partial summary judgment against T.F. and remand her case for a fact-finding hearing in accordance with WIS. STAT. § 48.424.[3]
*565 BACKGROUND
¶5 Allie was born to her mother T.F. and father B.P. in June 2014. In July 2014, Marinette County initiated CHIPS proceedings and was granted temporary custody of Allie. In October 2014, the circuit court found Allie was in need of protection or services, and it entered a CHIPS dispositional order that placed her in a foster home in Marinette, Wisconsin.[4] In March 2015, court orders were entered changing venue of this action to Brown County and Allie's physical placement to a different foster home in Brown County. A subsequent court order in June 2016 returned *564 Allie's placement to her original foster parent, who had moved to Madison. Since Allie's original removal in July 2014, she has never returned to either T.F.'s or B.P.'s care.
¶6 On October 30, 2017, the Department filed petitions to permanently and involuntarily terminate T.F.'s and B.P.'s parental rights. The petitions alleged both parents had abandoned Allie for a period of six months or longer. See WIS. STAT. § 48.415(1)(a)3. Both T.F. and B.P. contested the petitions. Following discovery, the Department moved for partial summary judgment contending that grounds existed to terminate T.F.'s and B.P.'s parental rights. In opposition, T.F. argued the Department had pleaded a legally inapplicable ground because Allie was involuntarily removed from her home pursuant to a CHIPS order. Both T.F.
*566 and B.P. claimed good cause under § 48.415(1)(c) as a defense for failing to visit or communicate with Allie during the six-month period.
¶7 The circuit court granted the Department's partial summary judgment motion. The court concluded the Department properly sought termination of T.F.'s and B.P.'s parental rights under subd. 3., that no genuine issues of material fact existed, and that T.F. and B.P. each abandoned Allie for a period of six months or longer between January 1, 2017, and October 30, 2017. It further determined that neither T.F. nor B.P. satisfied the statutory good cause defenses to abandonment. This consolidated appeal follows. Additional facts are provided below.
DISCUSSION
¶8 We address two main issues on appeal. T.F. first argues that the Department pleaded a legally inapplicable abandonment ground in its TPR petition, and in so doing violated her constitutional right to equal protection under the law. Second, T.F. and B.P. each assert that partial summary judgment was inappropriate because genuine issues of material fact exist as to their good cause defenses to abandonment.
I. The Department Pleaded a Legally and Factually Proper Statutory TPR Ground.
¶9 T.F.'s statutory interpretation argument is two-fold. She initially argues that when an out-of-home CHIPS order is in place, the Department is required to plead abandonment under subd. 2., which relates specifically to CHIPS orders. Here, the Department pleaded abandonment under subd. 3., a subdivision *567 that does not contain language specifically referencing CHIPS orders. Second, T.F. argues that the Department failed to state a claim for which relief can be granted because one of subd. 3.'s elements-that the parent must have "left" the child with another person-cannot be met in TPR cases involving out-of-home CHIPS placements.
¶10 We begin questions of statutory interpretation by looking at the text of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning. Id. We interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and reasonably, to avoid absurd or unreasonable results. Id. , ¶46. We may consider the statute's purpose, to the extent it is readily apparent from the statutory text or from the statute's context or structure. Id. , ¶49. We cannot, however, read language into the statute that does not exist.
*565 St. Croix Cty. DHHS v. Michael D. , 2016 WI 35, ¶17, 368 Wis. 2d 170, 880 N.W.2d 107. If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning. Kalal , 271 Wis. 2d 633, ¶46, 681 N.W.2d 110. The interpretation and application of a statute present questions of law that we review de novo while benefiting from the analyses of the circuit court. State v. Arberry , 2018 WI 7, ¶14, 379 Wis. 2d 254, 905 N.W.2d 832.
*568 A. WISCONSIN STAT. § 48.415(1)(a) permits the Department to plead any abandonment ground.
¶11 We first address T.F.'s argument that when an out-of-home CHIPS order is in place, the Department is required to plead abandonment under subd. 2. WISCONSIN STAT. § 48.415 lists the different grounds to involuntarily terminate a parent's rights, one of which is abandonment. In relevant part, the statute states:
(a) Abandonment ... shall be established by proving any of the following:
....
2. That the child has been placed, or continued in a placement, outside the parent's home by a court order containing the notice required by s. 48.356 (2) or s. 938.356 (2) and the parent has failed to visit or communicate with the child for a period of 3 months or longer.
3. The child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer.
Sec. 48.415(1)(a) (emphasis added).
¶12 The Department contends that WIS. STAT. § 48.415(1)(a) 's plain language permits it to plead any abandonment ground. We agree. For the purposes of statutory interpretation, the plain meaning of words may be established by consulting dictionary definitions. See *569 State v. Sample , 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998). "Any" means "one, some, or all indiscriminately of whatever quantity." Any , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Additionally, the phrase "shall be established by proving" refers to the elements the Department is required to prove, depending on the abandonment ground it pleads. See Heather B. v. Jennifer B. , 2011 WI App 26, ¶9, 331 Wis. 2d 666, 794 N.W.2d 800 (stating that subd. 2. has two elements). Read together, the plain meaning of § 48.415(1)(a) allows the Department to plead in its TPR petition any factually and legally applicable abandonment ground.
¶13 T.F. nonetheless argues that the legislature intended for the Department to proceed only under subd. 2.'s CHIPS-specific abandonment ground when an out-of-home CHIPS order is present because: (1) subd. 2. includes an express reference to CHIPS orders; and (2) subd. 2. is otherwise rendered superfluous. We disagree with T.F.'s interpretation, as it would read language into WIS. STAT. § 48.415(1)(a), which we cannot do. See Michael D. , 368 Wis. 2d 170, ¶17, 880 N.W.2d 107. Section 48.415(1)(a) lacks restrictive language requiring the Department to plead only subd. 2. in a case where an out-of-home CHIPS order is present. Furthermore, as we have explained above, T.F.'s interpretation would require us to ignore the word "any" within § 48.415(1)(a), which we also cannot do. We assume that the legislature's intent is expressed in the statutory language, and we must give effect to every word. Kalal , 271 Wis. 2d 633, ¶¶44-45, 681 N.W.2d 110.
¶14 Additionally, permitting the Department to plead abandonment under subd. 3. in TPR cases involving out-of-home CHIPS placements does not render subd.
*566 2. superfluous. Subdivisions 2. and 3. each *570 have different elements, and the differing facts and circumstances in each parent's case dictate the applicable subdivision under which the Department may choose to proceed. If the Department can prove that a child subject to a CHIPS order has been placed or continued in placement outside of a parent's home, that the child's parent was provided with the notice required by WIS. STAT. § 48.356(2) or WIS. STAT. § 938.356(2), and that the parent has failed to visit or communicate with the child for a period of three months or longer, then the Department may proceed under subd. 2. However, regardless of whether a CHIPS order exists, if the Department can prove that a parent left his or her child with another person, that the parent could discover the child's whereabouts, and that the parent failed to visit or communicate with the child for six months or longer, then the Department may proceed under subd. 3. Subdivision 2. is not rendered superfluous by subd. 3.-it merely provides the Department with the ability to petition for TPR at an earlier time than permitted under subd. 3. when a CHIPS order is present and the statutorily required notice has been provided.
¶15 T.F. further argues that in TPR cases involving out-of-home CHIPS placements, permitting the Department to prove abandonment under subd. 3. "would lighten the [Department]'s evidentiary burden, thus contravening legislative intent." T.F. notes that because the Department proceeded under subd. 3., it did not need to prove that she was provided with the same notice, as required by subd. 2., warning about the consequences of a parent's failure to visit or communicate with his or her child. However, we do not view subds. 2. and 3.'s different elements as indicative of the legislature's intent to place a heavier burden on the *571 Department to prove abandonment in cases involving out-of-home CHIPS orders. The Department's burden to prove abandonment under subd. 3. is not lightened, but merely different based upon different factual circumstances.
¶16 When there is a CHIPS order in place, a parent's rights may be subject to earlier termination under subd. 2. than under subd. 3. if a child is placed outside of his or her parent's home. Thus, the legislature deemed it necessary to provide the parent with notice of the potential for termination of his or her parental rights if the parent failed to visit or communicate with the child for three months after the child's removal. We conclude the legislature viewed subd. 2.'s three-month provision with the included notice about the consequences of failing to have contact with the child "as a special scenario justifying a shorter abandonment period" because "[w]here there is an active CHIPS order, it is a given that the child has been facing some kind of peril." Heather B. , 331 Wis. 2d 666, ¶16, 794 N.W.2d 800.
¶17 On the other hand, if the Department proceeds with a TPR petition under subd. 3. because a child has been left by his or her parent with another person and the parent has failed to visit or communicate with the child for six months-a period twice as long as that considered under subd. 2.-it is apparent the legislature no longer deemed it necessary for the Department to prove that it provided notice to a parent regarding the consequences for failing to contact the child in order to prove abandonment. Under that circumstance, the Department is required to wait for a materially longer period of time before bringing its TPR petition. See id. (describing subd. 2.'s three-month *572 abandonment period as "an exception" to subd. 3.'s "more general" six-month abandonment period). *567 ¶18 We therefore conclude that in a TPR case, WIS. STAT. § 48.415(1)(a) 's plain language permits the Department to plead any factually and legally applicable statutory basis for abandonment. We further hold that in TPR cases where an out-of-home CHIPS order is present, the Department is not limited to pleading abandonment under subd. 2. We next turn to whether the Department can establish subd. 3.'s elements when an out-of-home CHIPS order is in place, as is the case here.
B. The Department can establish abandonment under WIS. STAT. § 48.415(1)(a)3. in cases involving out-of-home CHIPS placements.
¶19 In her reply, T.F. retreats from her original assertion that the Department is required to file a TPR petition based upon abandonment under subd. 2. in out-of-home CHIPS cases. She reframes her argument, stating, "[T]he question is not whether the Department can file a petition under 'any of the grounds listed under WIS. STAT. § 48.415(1) ;' it is whether the Department can prevail on 'any' of the [§] 48.415 grounds." She argues that in her case, the Department failed to state a claim for which relief can be granted because one of subd. 3.'s elements-that the parent must have "left" the child with another person-cannot be met in TPR cases involving out-of-home CHIPS placements.
¶20 Subdivision 3.'s first element requires the Department to prove that the child "has been left by the parent with any person." WIS. STAT. § 48.415(1)(a)3. T.F. asserts that "[u]nder the ordinary, accepted meaning of the term 'left,' a parent cannot be said to have *573 left a child when the child was placed out of [his or her] home in a CHIPS action." The Department disagrees, relying on our decision in Rhonda R.D. v. Franklin R.D. , 191 Wis. 2d 680, 706-07, 530 N.W.2d 34 (Ct. App. 1995).
¶21 In Rhonda R.D. , the father appealed an order terminating his parental rights under WIS. STAT. § 48.415(1)(a)3. (1993-94).[5] Id . at 690, 530 N.W.2d 34. One issue on appeal required us to interpret subd. 3.'s "has been left by the parent" element. Id. at 703, 530 N.W.2d 34. The father moved to dismiss the mother's TPR petition by arguing the "has been left by the parent" element refers only to the initial circumstance that separated the parent from his or her child and, therefore, cannot apply to the parent's conduct once that separation has occurred. Id. In that instance, the conduct was the mother's taking the child to Wisconsin and then being awarded sole custody pursuant to a divorce judgment. Id.
¶22 We first concluded that the term "left" was ambiguous because "[i]t could mean the child is allowed to remain with the ... person by the parent, or it could mean the child is placed there by the parent." Id. at 704, 530 N.W.2d 34. We determined this distinction was important because "[u]nder the first interpretation, the focus is not on the initial placing of the child, but on the parent's conduct of allowing the child to remain." Id. After analyzing all of the abandonment grounds within WIS. STAT. § 48.415(1)(a), we found that the abandonment paragraph focuses on a parent's contact, or lack thereof. Id. at 705, 530 N.W.2d 34. For this reason, we concluded that subd. 3. would "apply both to those situations where *574 the parent actively places the child with another person and to those situations where the parent does not do so, but 'knows or could discover the *568 whereabouts of the child and the parent has failed to visit or communicate with the child ....' " Id. at 706, 530 N.W.2d 34 (quoting WIS. STAT . § 48.415(1)(a)3. (1993-94)). Further, we determined the circuit court's response to a jury's question-namely, that "the phrase 'left with' another person includes, but is not limited to, a situation where a child remains with a relative or other person as a result of a court order"-was "consistent with our construction of 'left with.' " Id. at 706-07, 530 N.W.2d 34.
¶23 T.F. argues that Rhonda R.D. is inapposite, but her arguments are undeveloped. She asserts that a "divorce order cannot be equated to an out-of-home CHIPS order," but she fails to explain why that is the case. She also asserts that there is "a unique power disparity in cases where the government is the petitioner," yet she fails to explain how this assertion undermines the application of our holding in Rhonda R.D. to TPR cases involving out-of-home CHIPS orders. In all, relying upon our analysis in Rhonda R.D ., we conclude that a child's placement outside of a parent's home pursuant to a CHIPS order can satisfy subd. 3.'s "has been left by the parent with any person" element. Subdivision 3. can apply in situations where a parent either does or does not actively place a child with another person, as long as the parent "knows or could discover the whereabouts of the child" and nonetheless "failed to visit or communicate" with him or her. Id. at 706, 530 N.W.2d 34 (quoting WIS. STAT. § 48.415(1)(a)3. (1993-94)). Subdivision 3.'s abandonment ground does not focus on the reason for a child's removal from a parent's home, but, rather, focuses on a parent's contact, *575 or lack of contact, after removal. Id. at 704, 530 N.W.2d 34. Therefore, the "has been left by the parent with any person" element can be satisfied in a situation, as is the case here, where a child remains with a foster parent as a result of an out-of-home CHIPS order.
¶24 Finally, T.F. asserts that allowing the Department "to proceed under [subd. 3.] where an out-of-home CHIPS order is in place would ... lead to unreasonable and unconstitutional results." Specifically, T.F. contends that the statute, as applied to her, would violate her constitutional guarantees of substantive due process and equal protection under the law. She argues that permitting the Department to choose between subds. 2. and 3. would result in "arbitrary and unequal application of the law" because the Department could "elect to treat similarly situated parents ... differently." The Department responds that we cannot address these constitutional arguments because T.F. failed to serve the Wisconsin Attorney General with notice that she claims subd. 3. is unconstitutional as applied to her. See WIS. STAT. § 806.04(11).
¶25 Generally, a party must notify the attorney general "in all cases involving constitutional challenges." See Kurtz v. City of Waukesha , 91 Wis. 2d 103, 117, 280 N.W.2d 757 (1979). This is true even when, as here, a party does not seek a declaratory judgment. See id. ("A challenge to a statute is recognized even when the constitutional issue is collateral to or a preliminary step in the determination of the rights sought to be determined."). This judicially created procedural rule applies when a party asserts a statute is unconstitutional as applied to his or her case, as well as when he or she argues a statute is unconstitutional on its face. See *576 W.W.W. v. M.C.S. , 161 Wis. 2d 1015, 1024-25, 468 N.W.2d 719 (1991) ; O'Connell v. Board of Educ., Joint Dist. #10 , 82 Wis. 2d 728, 732-35, 264 N.W.2d 561 (1978).
¶26 T.F. contends this requirement to notify the attorney general is not *569 applicable to bar our review of her claim because she does not contest the constitutionality of the statute. Instead, she asserts the constitutionality of WIS. STAT. § 48.415(1)(a) is at issue only insofar as it is a "maxim of statutory construction" that courts must interpret statutes to avoid unconstitutional results. She argues this statutory construction analysis requires the Department to petition to terminate her parental rights only under subd. 2., as doing so under subd. 3. violates her rights to equal protection.
¶27 However, in making this argument, T.F. ignores that her statutory construction analysis is necessarily premised on us first analyzing whether the termination of her parental rights under subd. 3. would violate her right to equal protection under the law. There is nothing in the record to indicate T.F. provided notice to the attorney general that she questioned the constitutionality of the Department's claim brought under subd. 3., and she does not refute the Department's assertion that she had not previously provided such notice. While the failure to notify the attorney general "does not create a jurisdictional bar" to appellate review when the proceeding does not involve a declaratory judgment, see W.W.W. , 161 Wis. 2d at 1025 n.6, 468 N.W.2d 719., and a party's failure to notify the attorney general is also a curable defect, id. (citing William B. Tanner Co. v. Estate of Fessler , 100 Wis. 2d 437, 444, 302 N.W.2d 414 (1981), abrogated on other grounds by *577 Sears, Roebuck & Co. v. Plath , 161 Wis. 2d 587, 468 N.W.2d 689 (1991) ), we nonetheless decline to address T.F.'s equal protection argument.
¶28 In addition to failing to notify the attorney general of her claim, T.F. raises her equal protection argument for the first time on appeal. We usually do not consider issues raised for the first time on appeal. See Apex Elecs. Corp. v. Gee , 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). The Department did not address the merits of the constitutional issue on appeal because it argued T.F.'s failure to notify the attorney general precluded our review. While we review the constitutionality of the statute de novo, we would benefit from the analyses of the attorney general, the Department, and the circuit court in making our decision. Therefore, we will not address T.F.'s constitutional claim.
¶29 We do, however, address one aspect of T.F.'s argument as it relates to her good cause defense on remand. T.F. asserts that permitting the Department to proceed under subd. 3. is unfair because it renders an aspect of her good cause defense irrelevant. Under subd. 2., a parent is permitted to show he or she communicated about the child with the agency responsible for the care of the child during the specified time period. If the Department proceeds under subd. 3., T.F. claims a parent's communication with the agency is insufficient; rather, the parent must have had contact with the child or communicated about the child with the person who had physical custody of the child in order to avoid an abandonment finding.[6] T.F. argues the latter distinction *570 is particularly important here *578 because Allie's conditions for return, as described in the CHIPS order, stated that while contact with Allie or the foster parent was not prohibited, T.F. was only required to maintain contact with the Department. T.F. asserts that she maintained contact with the Department as instructed in order to satisfy the CHIPS order's condition to regain custody of Allie. Because the Department sought to terminate her parental rights under subd. 3., she claims that her contact with the Department is irrelevant for her good cause defense, but that would not have been so had the Department pursued abandonment under subd. 2. We disagree.
¶30 Regardless of whether the Department pursued abandonment under either subd. 2. or 3. in this case, T.F.'s communication with the Department is still relevant to her good cause defense. T.F. could show that she had good cause "for having failed to communicate about" Allie with her foster parent because the CHIPS order only required T.F. to communicate with *579 the Department. In other words, T.F.'s communication with the Department would not satisfy WIS. STAT. § 48.415(1)(c) 3.a.'s requirement to directly communicate with Allie's foster parent, but it could still satisfy § 48.415(1)(c) 3.b.'s requirement that there was good cause for failing to communicate with Allie's foster parent. Under these circumstances, T.F.'s communication with the Department was relevant for a good cause defense, regardless of whether the Department alleged abandonment under subd. 2. or 3.
II. The Circuit Court's Grant of Partial Summary Judgment.
¶31 T.F. concedes that if we conclude the Department properly pursued termination of her parental rights under subd. 3., the Department met its burden to prove she abandoned Allie. B.P. also concedes the Department proved subd. 3.'s abandonment elements. Nonetheless, they both argue that the circuit court erred in granting the Department partial summary judgment because genuine issues of material fact are in dispute as to each of their good cause defenses.
¶32 As discussed above, if the Department proves abandonment under subd. 3., WIS. STAT. § 48.415(1)(c) provides parents an opportunity to show that they had good cause for failing to visit or communicate with their child for the six-month period where they had no contact. See supra ¶29 n.6. Here, the circuit court granted partial summary judgment, concluding both T.F. and B.P. failed to prove good cause for failing to visit or communicate with Allie during the relevant six-month period.
¶33 Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and *580 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We begin by examining the moving party's submissions to determine whether they sufficiently establish a prima facie case for summary judgment. *571 PNC Bank, N.A. v. Bierbrauer , 2013 WI App 11, ¶9, 346 Wis. 2d 1, 827 N.W.2d 124 (2012). If they do, we then turn to the opposing party's submissions to determine whether they show material facts are in dispute such that the opposing party is entitled to a trial. Id.
¶34 The purpose of summary judgment is to avoid trials when there is nothing to try. Tews v. NHI, LLC , 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860. Courts do not resolve issues of fact on summary judgment, but instead only decide whether genuine issues of fact exist. Oddsen v. Henry , 2016 WI App 30, ¶25, 368 Wis. 2d 318, 878 N.W.2d 720. A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Schmidt v. Northern States Power Co. , 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294. Summary judgment should not be granted if differing reasonable inferences can be drawn from the undisputed facts. Tews , 330 Wis. 2d 389, ¶42, 793 N.W.2d 860. All favorable facts and all reasonable inferences must be construed in the nonmoving party's favor. Oddsen , 368 Wis. 2d 318, ¶26, 878 N.W.2d 720. For this reason, the Department shoulders the burden in TPR cases to show it is entitled to judgment as a matter of law when, "taking into consideration the heightened burden of proof specified in WIS. STAT. § 48.31(1) and required by due process," there are no genuine factual disputes "regarding the asserted *581 grounds for unfitness under WIS. STAT. § 48.415." See Steven V. v. Kelley H. , 2004 WI 47, ¶6, 271 Wis. 2d 1, 678 N.W.2d 856. We review a grant of summary judgment independently, using the same methodology as the circuit court. Bierbrauer , 346 Wis. 2d 1, ¶9, 827 N.W.2d 124.
A. T.F.'s good cause defense to abandonment.
¶35 T.F. asserts that she had good cause for failing to communicate and visit with Allie between January 1 and July 1, 2017, the six-month period when the circuit court found she was not incarcerated.[7] We agree with T.F. that the circuit court erred in granting summary judgment as to her because there are genuine issues of fact as to whether she had good cause for failing to visit and communicate with Allie between January 1 and July 1, 2017. First, we conclude there is a genuine dispute as to whether T.F. had good cause for failing to visit Allie. See WIS. STAT. § 48.415(1)(c)1. T.F. asserted in her opposition to summary judgment that her lack of transportation provided good cause for her inability to have face-to-face visits with Allie because she was unable to obtain transportation to travel the *582 over 100-mile distance between her place of residence and Allie's placement in Madison.[8] She also testified *572 that the Department wanted her to receive unknown services before she renewed visits with Allie, but it failed to both advise her of the services required and arrange for them to be provided. Viewing the evidence in a light most favorable to T.F., we conclude material facts exist as to whether T.F. had good cause for failing to visit Allie.
¶36 The Department argues the circuit court properly found that T.F.'s lack of transportation did not constitute good cause for her failing to visit Allie because the Department offered T.F. transportation services to Madison. The Department asserts deposition testimony of a Brown County case worker demonstrated that T.F. knew about the transportation offer, yet she failed to "follow through" and take advantage of it. We disagree. The case worker's testimony shows only that the Department had a discussion with T.F. sometime during or after March 2017 about the potential for transportation services in the future. The potential for future transportation services at an unknown time is different than providing T.F. with a transportation plan by which she failed to abide. Furthermore, the record is unclear as to whether a transportation plan was actually in place within the *583 relevant six-month period. Finally, the record is also unclear as to what services the Department wanted T.F. to complete before she would be permitted to visit Allie, and if T.F. had the opportunity to complete those services. We therefore conclude T.F. has demonstrated that disputed issues of material fact exist as to her good cause defense for failing to visit Allie.
¶37 T.F. also asserts that a genuine dispute exists as to whether she had good cause for failing to communicate with Allie during the relevant six-month period. WISCONSIN STAT. § 48.415(1)(c)3. specifically provides that a parent may have good cause for failing to communicate with his or her child "based on evidence that the child's age or condition would have rendered any communication with the child meaningless." Given that Allie turned three in June 2017, T.F. argued this defense was applicable at summary judgment.
¶38 The circuit court disagreed, concluding that one of T.F.'s interrogatory responses undermined her failure-to-communicate defense. The Department's interrogatory asked, "At any point in [Allie]'s life, did you believe communication with [Allie], in any form was meaningless?" T.F. responded, "No." The Department argued, and the court agreed, that T.F.'s answer precluded her from raising her good cause defense that communication with Allie was "meaningless" because of Allie's age. T.F. responded that she interpreted the interrogatory to question whether communication was meaningless to her in the context of her being a mother to a young child. She considered the contact meaningful, and thus answered "no" to the question. She asserted the interrogatory was impermissibly vague as to the subject of the question-to whom the contact *584 was meaningless-and that her answer should not be used against her. T.F. renews these same arguments on appeal.
¶39 We begin by noting that the Department fails to respond to T.F.'s argument on this issue on appeal. Consequently, we could conclude the Department concedes the issue. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979)
*573 (stating that a failure to refute an argument constitutes a concession). Nevertheless, we address the merits of T.F.'s argument.
¶40 WISCONSIN STAT. § 48.415(1)(c)3. provides good cause as a defense to an abandonment claim in a TPR action for a parent's lack of communication with his or her child if the child is too young or has a condition that renders meaningless the parent's communication to the child. The statute's purpose is to excuse a parent's failure to communicate with a child who might not be able to understand or appreciate the parent's communication in any form-i.e., by telephone, letter, email, or otherwise. Under those circumstances a parent should, as the statute instructs, communicate directly with the person who has custody of the child or the agency responsible for the child's care. See § 48.415(1)(c) 3.a.
¶41 The Department's interrogatory asked, "At any point in [Allie]'s life, did you believe communication with [Allie], in any form was meaningless?" We agree with T.F. and conclude the Department's interrogatory is impermissibly vague. First, the interrogatory is vague regarding to whom the communication would be meaningless. A reasonable person could interpret the interrogatory as asking whether communication with Allie was meaningless to T.F., to Allie, or to both of them. Additionally, the interrogatory's phrase *585 "in any form" could be interpreted as referencing either the method of communicating with the child or the audience to whom the communication was directed. Under these circumstances, and when drawing reasonable inferences in T.F.'s favor, see Tews , 330 Wis. 2d 389, ¶42, 793 N.W.2d 860, a reasonable trier of fact could conclude that, regardless of T.F.'s interrogatory response that she felt her communication with Allie was meaningful, T.F.'s contact with three-year-old Allie was meaningless within the meaning of WIS. STAT. § 48.415(1)(c) 3.a. due to Allie's age. The fact finder could thus return a verdict in T.F.'s favor. See Schmidt , 305 Wis. 2d 538, ¶24, 742 N.W.2d 294. We therefore determine there is a genuine dispute as to whether T.F.'s contact with Allie was meaningless.
¶42 Because disputed issues of material fact exist as to T.F.'s good cause defenses, we conclude the circuit court erred in granting partial summary judgment against her. Accordingly, we direct the court on remand to hold a fact-finding hearing pursuant to WIS. STAT. § 48.424.
B. B.P.'s good cause defense to abandonment.
¶43 B.P. argues that disputed issues of material fact exist as to his good cause defense. He asserts that he had good cause for failing to visit and communicate with Allie because of his mental health diagnoses and the "emotional strain" he experienced "precipitated by the death of his mother and brother" around the time Allie was born in 2014. When opposing summary judgment, he averred, in relevant part, that: (1) he has been diagnosed with epilepsy, "[g]eneralized [a]nxiety [d]isorder, depression with suicidal ideation, *586 and [attention-deficit disorder ]"; (2) he takes prescribed medications for his medical diagnoses; (3) his brother died fifteen days after Allie was born; (4) his mother died just over three months after Allie was born; (5) he had "very little memory of the time between [Allie]'s birth until about December 2017, when [he] began to stabilize"; and (6) he was incapable "of visiting or communicating with [Allie] or her caregivers, or even of understanding where she was living" because of his "mental health conditions and emotional strain from [his] family losses." He further *574 averred, without providing specific dates, that he called and left messages with Allie's caregiver on two occasions, but he never received any return calls. B.P. asserts that his averments alone create a genuine dispute of material fact as to his WIS. STAT. § 48.415(1)(c) good cause defense to abandonment.
¶44 The Department responds that partial summary judgment was appropriate because B.P. failed to demonstrate how the facts he alleged are material to his good cause defense. The Department asserts that without expert testimony, B.P. cannot demonstrate how his particular mental health diagnoses or the emotional strain he experienced prevented or interfered with his ability to visit or communicate with Allie. We agree with the Department's position.
¶45 As a threshold matter, we agree with the Department that B.P. is required to allege facts showing how his mental health diagnoses and emotional strain caused his failure to visit or communicate with Allie. In his reply brief, B.P. cites the jury instruction for a good cause defense, WIS JI- CHILDREN 314 (2015), for his assertion that he is not required to prove causation, but, rather, that he "had a good reason, *587 excuse, explanation, or basis" for his failure. However, the jury instruction states that "any other factors beyond the parent[']s control which precluded or interfered with visitation or communication" should be considered in a good cause defense determination. Id. (emphasis added). We therefore disagree with B.P. that he was required only to allege the mere presence of his mental health diagnoses and emotional strain. He was also required to establish that those factors caused him not to visit or communicate with Allie. We conclude B.P. failed to do so for two reasons.
¶46 First, the record lacks any evidence that would demonstrate how B.P.'s mental health problems and emotional strain prevented him from visiting or communicating with Allie at any point since her birth-let alone during the January 1 to July 1, 2017 period the circuit court considered. Viewing the evidence in a light most favorable to B.P., his averred facts demonstrate the presence of mental health problems and emotional strain from shortly after Allie's birth until he "began to stabilize" around December 2017. However, any inference or conclusion as to how these issues affected his ability to visit or communicate with Allie would be based upon sheer speculation. Accordingly, we conclude summary judgment was appropriate because the presence of particular mental health problems and emotional strain without any further supporting information would not permit a reasonable jury to return a verdict in B.P.'s favor. See Schmidt , 305 Wis. 2d 538, ¶24, 742 N.W.2d 294.
¶47 We draw a similar conclusion regarding B.P.'s claim that he made two unanswered calls to Allie's caregiver. B.P. is required to "set forth specific facts showing that there is a genuine issue for trial." See WIS. STAT. § 802.08(3) (emphasis added). His general *588 averment that he made two calls at unknown times, without more, is insufficient to create a material question of fact as to his good cause for failing to communicate with Allie or her foster parent. Further, no reasonable inference can be drawn that the calls occurred during the January 1 to July 1, 2017 period that the circuit court considered.
¶48 Second, and relatedly, without expert testimony, B.P. cannot establish his mental health or grief caused him not to visit or communicate with Allie. Whether expert testimony is necessary in a given situation is a question of law, which *575 we decide without deference to a circuit court's opinion on the matter. Wal-Mart Stores, Inc. v. LIRC , 2000 WI App 272, ¶11, 240 Wis. 2d 209, 621 N.W.2d 633. "In situations where the factual question of causation is 'so complex or technical' that a lay fact finder 'without the assistance of expert testimony would be speculating,' the absence of expert testimony 'constitutes an insufficiency of proof.' " Id. , ¶16 (quoting Cramer v. Theda Clark Mem'l Hosp. , 45 Wis. 2d 147, 152, 172 N.W.2d 427 (1969) ). Our supreme court has explained that "there is a distinction 'between matters of common knowledge and those needing expert testimony to explain.' " Id. (quoting Cramer , 45 Wis. 2d at 150, 172 N.W.2d 427 ). "[E]xpert testimony should be adduced concerning matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." Cramer , 45 Wis. 2d at 150, 172 N.W.2d 427.
¶49 Here, we conclude B.P. required expert testimony to relate his factual allegations to his good cause defense. For instance, B.P. fails to advise how and when his particular mental health diagnoses and *589 emotional strain affected his ability to travel and either visit or communicate with Allie, and why he suffered a memory loss until December 2017 and only began to "stabilize" at that time. These are complex matters outside the realm of the ordinary experience of humankind, such that one would need to speculate without the assistance of expert testimony. The same holds true for how the death of B.P.'s brother and mother affected him.[9] As such, B.P.'s asserted facts do not create a genuine dispute of material fact because no reasonable jury could find he had good cause for failing to visit or communicate with Allie without engaging in speculation. See Schmidt , 305 Wis. 2d 538, ¶24, 742 N.W.2d 294.
¶50 Finally, B.P. makes two additional arguments that are easily dismissed. First, B.P. asserts the circuit court erred by impermissibly finding him incredible. "[C]redibility determinations are reserved for the fact finder and are not appropriate for summary judgment." Kraft v. Steinhafel , 2015 WI App 62, ¶18, 364 Wis. 2d 672, 869 N.W.2d 506. We agree with B.P. that the court did opine on his credibility. However, we conclude any credibility determination the court made-while improper at summary judgment-is inconsequential. As the balance of this opinion should make clear, even when viewing the evidence in a light most *590 favorable to B.P., he failed to set forth sufficient facts with supporting expert opinions so as to survive summary judgment.
¶51 Second, B.P. asserts that summary judgment is inappropriate here because our supreme court in Steven V. recognized that "[s]ummary judgment will ordinarily be inappropriate for TPR cases premised on ... fact-intensive grounds for parental unfitness." Steven V. , 271 Wis. 2d 1, ¶36, 678 N.W.2d 856 (referencing WIS. STAT. § 48.415(1), abandonment, as one such fact-intensive ground). We disagree that a grant of summary judgment here violates the directive set forth in Steven V. Although Steven V. cautions against summary judgment in some instances, it made *576 it clear that "[t]he propriety of summary judgment is determined case-by-case." Id. , ¶37 n.4 ; see also State v. Bobby G. , 2007 WI 77, ¶40, 301 Wis. 2d 531, 734 N.W.2d 81. Here, the facts B.P. alleged in opposition to summary judgment are so insufficient that no reasonable jury would be able to return a finding in his favor. See Schmidt , 305 Wis. 2d 538, ¶24, 742 N.W.2d 294.
CONCLUSION
¶52 We conclude that in a TPR action, the plain language of WIS. STAT. § 48.415(1)(a) permits the Department to plead any factually and legally applicable statutory basis for abandonment, and the Department was not limited to seeking termination of T.F.'s and B.P.'s parental rights under subd. 2., despite the fact Allie was placed outside of each parent's home pursuant to a CHIPS order. We further conclude that the involuntary placement of Allie pursuant to an out-of-home CHIPS order satisfied subd. 3.'s "has been left" element, and T.F.'s good cause defense was not rendered irrelevant by application of that statutory subdivision.
*591 We therefore affirm the circuit court's decision that the Department could plead and prove grounds existed to terminate T.F.'s and B.P.'s parental rights pursuant to § 48.415(1)(a)3. Further, we affirm the circuit court's grant of partial summary judgment against B.P. We reverse the circuit court's grant of partial summary judgment against T.F. and remand for a fact-finding hearing in her case, in accordance with WIS. STAT. § 48.424.
By the Court. -Orders affirmed in part; reversed in part and cause remanded for further proceedings.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

On July 16, 2018, we granted T.F.'s and B.P.'s petitions for leave to appeal a nonfinal order pursuant to Wis. Stat. Rule 809.50. This consolidated appeal was converted from a one-judge appeal to a three-judge appeal by the October 16, 2018 order of the Chief Judge of the Court of Appeals. See Wis. Stat. § 752.31(3) ; Wis. Stat. Rule 809.41(3).
For ease of reading, we use a pseudonym when referring to the parties' daughter, rather than her initials.

Cases appealed under Wis. Stat. Rule 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply ...." See Rule 809.107(6)(e). Conflicts in this court's calendar and our decision to convert this appeal from a one-judge appeal to a three-judge appeal have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. See Wis. Stat. Rule 809.82(2)(a) ; Rhonda R.D. v. Franklin R.D. , 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

The circuit court held the hearing on the CHIPS order on September 26, 2014. The CHIPS order was entered October 9, 2014.

The 1993-94 version of Wis. Stat. § 48.415(1)(a)2.-3. is substantively similar to the 2017-18 version, except that the subdivisions' abandonment periods are longer in the prior version. This difference is inconsequential to our decision.

Wisconsin Stat. § 48.415(1)(c) provides, in relevant part:
Abandonment is not established ... if the parent proves all of the following by a preponderance of the evidence:
1. That the parent had good cause for having failed to visit with the child throughout the [relevant] time period ....
2. That the parent had good cause for having failed to communicate with the child throughout the [relevant] time period ....
3. If the parent proves good cause under [§ 48.415(1)(c)2. ], including good cause based on evidence that the child's age or condition would have rendered any communication with the child meaningless, that one of the following occurred:
a. The parent communicated about the child with the person or persons who had physical custody of the child during the time period specified in par. (a)2. or 3., whichever is applicable, or, if par. (a)2. is applicable, with the agency responsible for the care of the child during the time period specified in par. (a)2.
b. The parent had good cause for having failed to communicate about the child with the person or persons who had physical custody of the child or the agency responsible for the care of the child throughout the time period specified in par. (a)2. or 3., whichever is applicable.

When assessing T.F.'s and B.P.'s good cause defense claims, the circuit court narrowed the period it was evaluating to the six months between January 1 and July 1, 2017, because the court found T.F. was not incarcerated during that time. However, it appears from the record that T.F. may still have been incarcerated until sometime between February and March 2017. Neither T.F. nor B.P. assert the court erred in selecting the six-month abandonment period, and they do not argue on appeal that incarceration played any role in their defenses to abandonment. Thus, we similarly conclude that, based upon T.F.'s and B.P.'s last possible visit or communication with Allie, assessing whether abandonment occurred between January 1 and July 1, 2017, is proper.

We note that the record is unclear as to where T.F. lived from January 1 to July 1, 2017. However, we are to draw all reasonable inferences in T.F.'s favor. See Oddsen v. Henry , 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720. T.F. was released from Marinette County's jail sometime between February and March 2017. Given her repeated incarceration in northern Wisconsin and Michigan, and her averment that she lived in Appleton in June 2018, we can reasonably infer that she lived at least 100 miles from Madison during the relevant six-month period.

We can conceive of some instances where expert testimony might not be needed to show certain behavior was caused by trauma from the sudden death of a loved one-emotions which many likely experience at some point. However, similar to T.F., the circuit court analyzed whether B.P. abandoned Allie within the six-month period from January 1 to July 1, 2017. We conclude that the causal link between the deaths of B.P.'s relatives and his inability, over two-and-one-half years later, to visit or communicate with Allie is outside the realm of the ordinary experience of humankind.