COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2021AP1124**
**2021AP1125**

Cir. Ct. Nos. 2019TP43
2019TP44

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

NO. **2021AP1124**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N. C.,
A PERSON UNDER THE AGE OF 18:

MARATHON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

S. K.,

RESPONDENT-APPELLANT.

---

NO. **2021AP1125**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. C.,
A PERSON UNDER THE AGE OF 18:

MARATHON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

**S. K.,**

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Reversed and cause remanded for further proceedings.*

¶1     STARK, P.J.[1]  Sarah[2] appeals from orders terminating her parental rights to her two daughters, Nora and Abby, based upon her failure to assume parental responsibility for them.[3]  Sarah argues that there are genuine issues of material fact and competing reasonable inferences as to whether she had a substantial relationship with her children.  She asserts that the circuit court therefore erred by granting partial summary judgment to the Marathon County Department of Human Services (the County) and finding her unfit during the grounds phase of these termination of parental rights (TPR) proceedings.

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading and to protect confidentiality, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials, and do the same for any of Sarah's family members referenced in this opinion.

[3] Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply …." *See* RULE 809.107(6)(e).  Conflicts in this court's calendar have resulted in a delay.  It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  Accordingly, we extend our deadline to the date this decision is issued.

¶2　We conclude that when viewed in the light most favorable to Sarah, there are competing material and reasonable inferences that can be drawn from the undisputed facts as to whether Sarah had a substantial relationship with her daughters, rendering summary judgment improper. Accordingly, we reverse the orders terminating Sarah's parental rights to Nora and Abby, and we remand for the circuit court to conduct a jury trial on the grounds phase of the TPR proceedings.

## BACKGROUND

¶3　The following facts are taken from the parties' submissions on partial summary judgment. Sarah's daughters, Nora and Abby, were born approximately ten months apart in 2012. Sarah had exclusive care of both girls for the first four years of their lives, and they resided with her full-time in Wausau. During this time, Sarah provided for her children's daily supervision, education, protection and care.

¶4　Sarah was incarcerated seven times between December 2012 and November 2016, all while her children lived with her. Six of the seven periods of incarceration were for a term of three days or less, and they totaled approximately six and one-half weeks. Among the criminal offenses underlying these periods of incarceration were convictions for battery, injury by negligent use of a weapon, possession of tetrahydrocannabinols and prostitution. Sarah had not been incarcerated for any offenses for approximately two years before the children were removed from her home.

¶5　In November 2016, while Sarah's boyfriend was at her home in violation of a no-contact order resulting from a domestic abuse incident, he was

arrested for possessing drugs. Sarah was also arrested and incarcerated for violating her probation conditions due to her use of alcohol and illegal drugs.

¶6 As a result of Sarah's incarceration, Nora and Abby were found to be children in need of protection or services (CHIPS) and they were placed outside of Sarah's home. Among the conditions for the return of her children, Sarah was required to: (1) maintain a stable, drug-free residence; (2) provide proof of regular employment; (3) schedule medical and other appointments for the children; (4) participate in counseling; and (5) provide financial support for the children. The social worker assigned to the case confirmed that Sarah failed to meet the required conditions such that Sarah's children could be returned to her home at any time before the TPR orders were entered.

¶7 Upon their removal from Sarah's home, Nora and Abby were originally placed with their maternal grandfather. In April 2017, they were placed in the care of their aunt and uncle (the Robinsons), where they stayed until April 2019. Thereafter, the girls were placed in foster care approximately 150 miles from Wausau. At that time, Sarah's in-person visits with the children were suspended and she was only allowed weekly phone calls with her daughters. The foster mother maintained a log of Sarah's calls with her daughters. The log showed that Sarah often asked the girls about school and on one occasion inquired about a doctor's appointment. Routinely, Sarah simply asked them what they were up to and frequently expressed her love for them.

¶8 Since December of 2016, Sarah has been arrested an additional five times for drug and prostitution-related offenses. While incarcerated between August 2017 and February 2018, Sarah called her children weekly, they visited her while she was in jail, and Sarah wrote the children letters periodically.

4

¶9 The County filed petitions to terminate Sarah's parental rights to Nora and Abby on November 5, 2019. The petitions alleged two grounds for termination of Sarah's rights: (1) CHIPS under WIS. STAT. § 48.415(2)(a); and (2) failure to assume parental responsibility under § 48.415(6)(a).[4] In May 2020, the County filed a motion for partial summary judgment during the grounds phase of the TPR actions, arguing that Sarah was unfit as a matter of law due to her failure to assume parental responsibility for both children.[5]

¶10 The Robinsons each submitted an affidavit in the TPR proceedings detailing that Sarah visited her children throughout 2017 and made "about 75% or more" of her scheduled visits during that year, and 60% to 70% of her scheduled visits during 2018. The Robinsons subsequently filed a second, joint affidavit, explaining that they had been unable to fully explain the situation through the first set of affidavits. The Robinsons clarified that when not in jail, Sarah often arrived late to, or left early from, her scheduled visits with her children, she "actively used controlled substances during the time the children were placed with [the Robinsons]," and she was not regularly present for school pick-up or bedtimes. Additionally, they stated that "[Sarah] did not express an interest in the responsibilities of daily parenting," and that she "was not involved in providing [her children] education or guidance and was not involved in parental discipline."

---

[4] The County also petitioned to terminate the parental rights of Nora and Abby's father. He has not raised any challenges to the outcome of those TPR petitions and his rights are not at issue in these appeals.

[5] The County petitioned to terminate Sarah's parental rights to Nora and Abby in November 2019 and the matter was scheduled for a jury trial. The trial was delayed, however, as a result of the COVID pandemic. The County then moved for summary judgment and the circuit court entered the relevant summary judgment order in November 2020.

¶11 The circuit court granted the County's motion, concluding that there was no genuine issue of material fact as to Sarah's unfitness and that Sarah "had not taken a substantial role in her children's lives." The court determined that Sarah played "little to no" part in her children's lives while they were placed with the Robinsons, and that exposing her children to criminal activity while they lived with her evidenced Sarah's failure to exercise "significant responsibility" for her children's protection and care. The court stated that Sarah's evidence to the contrary "at most … [offered] a more favorable angle on the same facts by eliding some of the details."

¶12 The circuit court then determined that the only remaining issue was the conclusion to be drawn from the undisputed facts. The court concluded, "[T]he mother's evidence of limited, sporadic activity is insufficient to show that she accepted and exercised significant responsibility for the daily supervision, education, protection, and care of these two children."

¶13 A dispositional hearing was held on March 23, 2021. Following that hearing, the circuit court terminated Sarah's parental rights to both children. Sarah now appeals from the TPR orders.

## DISCUSSION

¶14 Sarah's sole argument on appeal is that the circuit court improperly granted partial summary judgment in favor of the County during the grounds phase of the TPR proceedings because the court chose between competing reasonable inferences that could have been drawn from the undisputed facts. Ultimately, we agree with Sarah that competing inferences can be drawn from those facts, and when reasonably construed in her favor, they preclude the court

6

from concluding as a matter of law that Sarah did not have a substantial relationship with her daughters.

¶15    Partial summary judgment is only appropriate during the grounds phase of TPR proceedings if the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.[6] *Steven V. v. Kelley H.*, 2004 WI 47, ¶6, 271 Wis. 2d 1, 678 N.W.2d 856.  A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294.  Importantly, summary judgment should not be granted if differing reasonable inferences can be drawn from the undisputed facts.  *Tews v. NHI, LLC*, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860.  The nonmoving party is entitled to the benefit of all favorable facts, and all reasonable inferences must be drawn in the nonmoving party's favor.  *Oddsen v. Henry*, 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720.  We review a grant of summary judgment independently, using the same methodology as the circuit court.  *PNC Bank, N.A. v. Bierbrauer*, 2013 WI App 11, ¶9, 346 Wis. 2d 1, 827 N.W.2d 124 (2012).

¶16    Summary judgment may be appropriate in certain fact-intensive TPR proceedings if no material facts are disputed.  *See Brown Cnty. Hum. Servs. v. B.P.*, 2019 WI App 18, ¶51 386 Wis. 2d 557, 927 N.W.2d 560.  This

---

[6] Wisconsin has a two-part procedure for an involuntary TPR.  The focus in the initial grounds phase is on the parent, and the county must prove by clear and convincing evidence that the parent is unfit.  WIS. STAT. § 48.31(1); *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶3-4, 271 Wis. 2d 1, 678 N.W.2d 856.  If the parent is found to be unfit, the focus in the subsequent dispositional phase is on the child, and the court must decide if it is in the child's best interests that the parent's rights be terminated.  WIS. STAT. § 48.426(2); *Steven V.*, 271 Wis. 2d 1, ¶27.

determination, however, is made on a case-by-case basis, and summary judgment "will ordinarily be inappropriate for TPR cases premised on … fact-intensive grounds for parental unfitness." *See Steven V.*, 271 Wis. 2d 1, ¶51. The failure to assume parental responsibility is one of the fact-intensive grounds on which summary judgment is ordinarily inappropriate. *Id.*

¶17 The circuit court concluded that there were no material disputed facts regarding Sarah's behavior and the history of her care for her children as detailed in the various affidavits. Importantly, neither party identifies any significant factual discrepancies in their respective appellate briefs.[7] Nevertheless, Sarah contends that the court improperly granted the County partial summary judgment because the court chose between competing reasonable inferences that could have been drawn from the undisputed facts.

¶18 In order to prove failure to assume parental responsibility under WIS. STAT. § 48.415(6), the County had the burden to prove by clear and convincing evidence that "the parent … [has] not had a substantial parental relationship with the child." *See* WIS. STAT. §§ 48.31(1), 48.415(6)(a). A "substantial parental relationship" means

> the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child. In evaluating whether the person has had a substantial parental relationship with the child, the court may consider such factors, including, but not limited to,

---

[7] In her reply brief, Sarah argues that certain factual discrepancies exist. She claims that, contrary to the County's contentions, she scheduled medical appointments for her children after they were removed from her care. Additionally, Sarah notes that the County claimed she did not maintain a safe residence without providing any evidence as to why the places she lived were unsafe. Given the totality of the circumstances, these are not material factual discrepancies such that they alone preclude summary judgment.

whether the person has expressed concern for or interest in the support, care or well-being of the child, whether the person has neglected or refused to provide care or support for the child.

Sec. 48.415(6)(b). The question is not whether a parent has assumed responsibility for the child "at one point," but instead whether a parent, based on the totality of the circumstances, has assumed responsibility for the child "over the entirety of the child's life." *Tammy W-G v. Jacob T.*, 2011 WI 30, ¶¶22, 26, 333 Wis. 2d 273, 797 N.W.2d 854.

¶19 Here, the circuit court concluded that by Sarah missing between twenty-five and fifty percent of her visits with her children while they were placed outside of her home, Sarah had "less contact with the children as time has gone on," and that, as a result, "the proof does not suggest that [Sarah] 'accepte[d] and exercise[d] … significant responsibility for the daily supervision, education, protection and care' of these two children." Sarah asserts, and we agree, that the court erred by focusing on the nature and extent of her relationship with her children after their removal from her care, rather than considering the totality of the circumstances that occurred over the entirety of her daughters' lives.

¶20 In concluding that Sarah failed to assume parental responsibility for her children, the circuit court appeared to give little weight to the nature and extent of Sarah's relationship with her children prior to their removal from her care. Yet, the failure to assume parental responsibility ground is an assessment spanning "the entirety of the child's life." *See Tammy W-G*, 333 Wis. 2d 273, ¶23. Sarah's summary judgment submissions evidenced the care, supervision, and continuing support that she alone provided to her children during the first four years of their lives including feeding them, scheduling and attending medical appointments, and

providing for their emotional needs. Differing reasonable inferences could be drawn from the nature of Sarah's relationship with her daughters when considering the amount of parental supervision and care she provided over the entirety of her children's lives. We therefore conclude the court erred by concluding that Sarah had no substantial relationship with her daughters, as a matter of law, based primarily on the quality of Sarah's relationship with them after they were removed from her care.

¶21 In response, the County argues that even if we consider Sarah's "exclusive" care of her children for the first four years of her children's lives, she was nevertheless incarcerated seven separate times during that period and exposed the children to criminal behavior. The County argues that no inference can be drawn from these facts other than that "[Sarah] was *not* exercising care and custody of the children for much of the time prior to their removal," and that her actions exposed her children to a hazardous environment.

¶22 Contrary to the County's argument, a jury could reasonably infer that despite her periods of incarceration, Sarah had a substantial relationship with her children prior to their removal from her care. Sarah spent a limited amount of time in jail during this period—a total of six weeks over a four-year period—and all of that time was served almost two years before the children were removed from her care.

¶23 Furthermore, although it is undisputed that Sarah engaged in criminal activity during this period, the County provided no evidence on summary judgment that the children were directly exposed to any of Sarah's criminal activity, or that it had a negative influence upon them, particularly given their young ages. Given the care, supervision, and continuing support that Sarah alone

provided to her children during the first four years of their lives, a jury could reasonably conclude that Sarah was able to maintain a safe and loving home environment and fulfill her parental responsibilities despite her periods of incarceration and her criminal activity during that time.

¶24     Sarah also argues that the circuit court erred by evaluating the nature and extent of her relationship with the children after their removal from her care. Sarah contends that a jury could reasonably infer from her attending seventy-five percent of her visits with her children, playing with her children, assisting in putting her children to bed, and attending several medical appointments with them that she had a substantial relationship with her children. We agree that a jury would be entitled to conclude that the inferences drawn from these facts, interpreted in the light most favorable to Sarah, support a finding that Sarah assumed parental responsibility for her children. The court therefore erred by failing to draw those inferences in Sarah's favor, as it was required to do in the context of the County's partial summary judgment motion.

¶25     Sarah further argues that the circuit court improperly weighed her credibility and that of the Robinsons and drew inferences in favor of the County from the Robinsons' affidavits, such as by placing emphasis upon the Robinsons' statements about the number of scheduled visits Sarah had missed, rather than the number she attended. She asserts that the court improperly conducted a "trial on affidavits," *see **Balcom v. Royal Ins. Co.***, 40 Wis. 2d 351, 357, 161 N.W.2d 918 (1968), which contributed to the court's conclusion that Sarah "has not taken a substantial role in her children's lives." She additionally asserts that the court's use of the affidavits to weigh credibility and competing inferences resulted in the court affording certain facts from later in her children's lives greater significance

11

in the unfitness analysis than the uncontested evidence regarding the care and supervision that Sarah provided to the children before they were placed outside of her home.

¶26 We agree with Sarah that the circuit court erred by choosing between reasonable inferences in concluding that the number of Sarah's missed visits, or her failure to sometimes attend the children's bedtimes or to schedule their medical appointments, outweighed the significance of the visits Sarah did attend and the love, care and supervision that she provided during those visits, and prior to the children's removal from her care. This weighing of reasonable, differing inferences is not proper for a court in deciding a summary judgment motion. *See Tews*, 330 Wis. 2d 389, ¶42.

¶27 The County argues that while Sarah's children were placed out of her home, she was not involved in scheduling their appointments or meeting their daily care needs, she arrived late or left early for scheduled visits, she missed visits and phone calls, she was not involved in the daily responsibilities of raising her own children, and she did not contribute to their support. These facts, according to the County, amount to undisputed evidence that Sarah did not exercise supervision over or assume parental responsibility for her children.

¶28 Again, however, this argument requires us to weigh the nature and extent of Sarah's relationship with her children before and after their removal to determine whether she maintained a substantial relationship with them under the totality of the circumstances. Summary judgment should not be granted if differing reasonable inferences can be drawn from the undisputed facts. *Id.*

12

¶29    Ultimately, we conclude that summary judgment is inappropriate in this case.  The circuit court improperly concluded that, as a matter of law, the County met its burden regarding Sarah's parental unfitness.  Accordingly, we reverse and remand for the circuit court to conduct a jury trial on the grounds phase of these TPR proceedings.

*By the Court.*—Orders reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.