COURT OF APPEALS
DECISION
DATED AND FILED

February 23, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1090**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021TP1

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO E. T. S.,
A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY DH&HS,

    PETITIONER-RESPONDENT,

  V.

C. S.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Affirmed*.

¶1    NASHOLD, J.[1]  C.S. appeals an order terminating his parental rights to his child, E.T.S.  C.S. argues that counsel was ineffective in failing to oppose a motion for partial summary judgment filed by the Portage County Department of Health and Human Services ("the County").  I disagree and therefore affirm.

## BACKGROUND

¶2    In February 2021, the County filed a petition to terminate C.S.'s parental rights to his son, E.T.S., on the ground that E.T.S. was a child in continuing need of protection or services ("CHIPS").  *See* WIS. STAT. § 48.415(2). The following facts from the Petition for Termination of Parental Rights ("TPR") are undisputed.  On March 29, 2018, the County received a child protective services report regarding E.T.S.  That same day, C.S. and E.T.S.'s mother had been arrested and jailed after law enforcement found methamphetamine and drug paraphernalia located in the bedroom that C.S., E.T.S., and E.T.S.'s mother shared.  C.S. was under the influence of methamphetamine at the time of his arrest.  C.S. and E.T.S.'s mother were subsequently charged with possession of methamphetamine, possession of drug paraphernalia, and neglecting a child.  In October 2018, a circuit court judge signed a dispositional order in the CHIPS proceeding, finding E.T.S. in need of protection or services pursuant to WIS. STAT. § 48.13(10).  The court ordered E.T.S. placed in the home of his maternal grandmother.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3 At the time the TPR petition was filed, E.T.S. had been placed out of home for 27 months since the CHIPS dispositional order was entered in October 2018. Under the dispositional order, C.S. was required to meet certain conditions before E.T.S. could be returned to his care, including controlling his drug addiction, committing no further crimes, keeping a safe and suitable home, and cooperating with his County social worker and his probation agent. C.S. was incarcerated for most of the duration of the CHIPS dispositional order, and it is undisputed that C.S. failed to meet the conditions required to have E.T.S. returned to his home.

¶4 The TPR petition stated that the County had made a "reasonable effort" to provide the services ordered by the court. *See* WIS. STAT. § 48.415(2)(c)2.a. (for termination of parental rights based on grounds of continuing CHIPS, the petitioner must show it "has made a reasonable effort to provide the services ordered by the court") ("reasonable efforts").

¶5 C.S. entered a plea denying the allegations in the County's TPR petition, and he requested a jury trial. C.S., through counsel, also responded to the County's discovery requests, including its request for admissions, in which C.S. admitted that the County had provided various services to him and that he did not avail himself of many of those services. C.S.'s counsel filed a motion to withdraw as C.S.'s attorney, which was granted. A new attorney was appointed to represent C.S. in the matter ("trial counsel" or "counsel").

¶6 Pursuant to a scheduling order, the case was set for a jury trial, dispositive motions were required to be filed by November 17, 2021, and responses to dispositive motions were required to be filed by December 17, 2021. The County filed a motion for partial summary judgment by the requisite deadline,

arguing that there were no genuine issues of material fact on the issue of whether C.S. is an unfit parent under WIS. STAT. § 48.415(2)(a), and that the County was entitled to summary judgment on that issue as a matter of law. Trial counsel did not file a response to the County's motion. The County filed a letter asking the court to sanction C.S. for failing to respond to the motion. Trial counsel also did not respond to this letter.

¶7      On January 5, 2022, the circuit court[2] held a hearing on the County's motion for summary judgment. The court asked trial counsel if he had any comment related to the motion and counsel responded:

> I did, Your Honor. Concerning the summary judgment, I want to indicate for the record that I had the opportunity to review discovery in this matter. I've had the opportunity to investigate [the] procedural course this matter took, and I have not been able to identify any issues of material fact, and I have not, intentionally, filed an affidavit as a result.

¶8      Trial counsel additionally requested to speak with C.S. regarding the possibility of a voluntarily termination of C.S.'s parental rights. Following input from the guardian ad litem and corporation counsel regarding setting the matter over for a possible voluntary TPR, C.S. interjected, making it clear that he would not agree to a voluntary TPR.

¶9      As a result, the circuit court proceeded with the summary judgment motion. The court stated that the County, in its pleadings and evidentiary submissions, made a sufficient prima facie case in support of its motion for partial

---

[2] The Honorable Thomas B. Eagon presided over the January 5, 2022 summary judgment hearing. The Honorable Michael D. Zell presided over the postdisposition hearing following this court's remand, discussed *infra*.

summary judgment (i.e., that C.S. is an unfit parent) and that the pertinent facts outlined by the County had not been disputed by C.S. The court determined that E.T.S. was adjudicated to be in need of protection and services and was placed outside the home for a cumulative total period of 6 months or longer pursuant to one or more court orders. *See* WIS. STAT. § 48.415(2)(a)1. Specifically, the court noted that, as of the date of the County's February 2021 TPR petition, E.T.S. had been placed outside the home for a total of 833 days. The court also determined that the undisputed facts established that the County made a reasonable effort to provide the services ordered by the court, pointing to the following undisputed facts set forth in the County's motion for summary judgment:

- Following C.S.'s release from a probation hold on March 18, 2020, he had only one contact with Portage County or Winnebago County Health and Human Services, despite numerous attempts to contact him by both departments, until April 17, 2020.

- C.S. was provided a number of services and referrals by the County during the pendency of the CHIPS dispositional order. C.S. was unable to participate in many of those services and referrals because he was incarcerated all but 4.5 months of the dispositional order.

- The County provided C.S. supervised visitation with his son.

- The County provided C.S. parenting and education services.

- The County offered C.S. mental health services through Winnebago County. C.S.'s social worker provided him with a list of over 10 providers to obtain a mental health assessment. C.S. admits he did not follow through with this.

- The County offered C.S. alcohol and other drug abuse ("AODA") services. C.S. did participate in an AODA assessment but did not follow through with recommendations. He also admits to declining information about Narcotics Anonymous.

- The County also offered ongoing case management to C.S. through Winnebago County when he resided there, and through Portage County when he resided there.

5

The court granted partial summary judgment in favor of the County, determining C.S. to be an unfit parent on grounds of continuing CHIPS.

¶10 A dispositional hearing was later held, following which the circuit court entered an order terminating C.S.'s parental rights to E.T.S. C.S. filed with this court a document that this court construed as a notice of intent to pursue postdisposition relief. Postdisposition counsel was appointed to represent C.S., and C.S. filed a notice of appeal, appealing the circuit court order terminating his parental rights. C.S. then filed a motion for the case to be remanded to circuit court so that the circuit court could hear and decide a postdisposition motion that he intended to file. This court granted the motion for remand, and C.S. filed a postdisposition motion.

¶11 C.S.'s postdisposition motion alleged that trial counsel was ineffective for failing to respond to the County's motion for partial summary judgment based on the information of record then available to counsel. Specifically, C.S. argued that counsel was ineffective for not opposing the County's position that the County made reasonable efforts to provide services to C.S.

¶12 An evidentiary hearing was held on C.S.'s postdisposition motion, at which trial counsel testified as follows. Counsel had been practicing TPR defense as an attorney for approximately 35 years. During counsel's representation of C.S., he had filed a discovery demand, interrogatories, and requests for production of documents. As of an October 2021 final pretrial hearing, he and C.S. had discussed C.S.'s discovery responses and had made a strategic decision to "stick with" those answers. Counsel had attempted to communicate with C.S. on six different occasions and C.S. was unwilling to speak with him about the case

during the last five contacts they had. Thus, counsel relied on the information that he had obtained through discovery. At the time of the January 2022 summary judgment hearing, counsel had reviewed discovery provided by the County, which consisted of approximately 700 pages. It was counsel's conclusion, based upon the existing facts, that the only possible inference that could be drawn was that the County had provided reasonable efforts. Counsel was unable to identify any genuine issues of material fact based on the existing discovery to oppose the summary judgment motion.

¶13    Following the testimony and arguments, the circuit court denied C.S.'s postdisposition motion. The court noted that the County's summary judgment motion contained "abundant facts indicating the services the County attempted to provide" and that trial counsel was not deficient in failing to argue that there were other inferences that could have been drawn to counter the County's evidence on that issue. The court determined that trial counsel was not deficient "for not asserting additional facts or pointing out that [C.S.] disagreed [that] the County provid[ed] reasonable efforts." The court concluded that the information upon which C.S. relied in support of his ineffective assistance claim was not sufficiently specific and would not have made a difference at the summary judgment hearing. The court issued a written order denying the postdisposition motion and the record was transmitted back to this court for review.

## DISCUSSION

¶14    C.S. argues that the circuit court erred in granting the County partial summary judgment determining that C.S. is an unfit parent, and subsequently terminating C.S.'s parental rights. Specifically, he argues that his trial counsel was ineffective in failing to oppose the County's summary judgment motion

because, based on the information then available to counsel, there were material issues of disputed fact as to whether the County made reasonable efforts. After setting forth governing legal principles, I explain why C.S.'s arguments are unpersuasive.

*I. Applicable Legal Principles and Standard of Review.*

¶15 "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." **Steven V. v. Kelley H.**, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first, or "grounds," phase, the petitioner (here, the County) must prove by clear and convincing evidence that one or more of the grounds for termination of parental rights enumerated in WIS. STAT. § 48.415 exist. *See **id.*** If the circuit court or jury determines that grounds exist, "'the court shall find the parent unfit.'" **Tammy W-G. v. Jacob T.**, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854 (quoted source omitted). In the second, or "dispositional," phase the petitioner must prove that termination is in the best interest of the child. ***Id.***, ¶¶19, 26-27.

¶16 This appeal concerns the first, or grounds, phase of the proceeding. "There are 12 statutory grounds of unfitness for termination of parental rights, *see* WIS. STAT. § 48.415(1)-(10), and if a petitioner proves one or more of the grounds for termination by clear and convincing evidence, 'the court shall find the parent unfit.' WIS. STAT. § 48.424(4) …." **Steven V.**, 271 Wis. 2d 16, ¶25.

¶17 The circuit court in this case concluded that C.S. was an unfit parent on the ground of continuing CHIPS, pursuant to WIS. STAT. § 48.415(2)(a). Pertinent here, § 48.415(2)(a) requires that the child has been adjudged to be in need of protection or services and has continued in a placement outside the child's home pursuant to one or more court orders for a cumulative total period of 6

months or longer; that the parent has failed to meet the conditions established for the safe return of the child to the home; and that "the agency responsible for the care of the child and the family… has made a reasonable effort to provide the services ordered by the court." Sec. 48.415(2)(a). "Reasonable effort" means "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child …, the level of cooperation of the parent … and other relevant circumstances of the case." Sec. 48.415(2)(a)2.a.

¶18     Our supreme court has held that in some circumstances, the grounds phase can be disposed of through summary judgment, under the standards established in WIS. STAT. § 802.08. *Steven V.*, 271 Wis. 2d 1, ¶¶4-5, 37-39. The entry of summary judgment is constitutionally permissible, and "[t]he propriety of summary judgment [on any ground] is determined [on a] case-by-case" basis. *Id.*, ¶37 n.4; *see also id.*, ¶44. "[S]ummary judgment may be employed in the grounds phase of a termination of parental rights proceeding when there is no genuine factual dispute that would preclude finding one or more of the statutory grounds by clear and convincing evidence." *Oneida Cnty. DSS v. Nicole W.*, 2007 WI 30, ¶14, 299 Wis. 2d 637, 728 N.W.2d 652; WIS. STAT. § 802.08(2). "An order granting partial summary judgment on the issue of parental unfitness where there are no facts in dispute and the applicable legal standards have been satisfied does not violate the parent's statutory right to a jury trial … or the parent's constitutional right to procedural due process." *Steven V.*, 271 Wis. 2d 1, Wis. 2d

¶5 (citations omitted).[3] The grant of summary judgment is reviewed de novo. *See Nicole W.*, 299 Wis. 2d 637, ¶8.

¶19 A parent in a TPR proceeding has a right to the effective assistance of counsel. *See id.*, ¶33; *see also A.S. v. State*, 168 Wis. 2d 995, 1005, 485 N.W.2d 52 (1992) (adopting ineffective assistance of counsel standard for TPR proceedings). The test for ineffective assistance of counsel during TPR proceedings is the same as the two-prong test applicable to criminal cases set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Nicole W.*, 299 Wis. 2d 637, ¶33. Under *Strickland*, to show that counsel was ineffective, a parent must demonstrate that: (1) counsel was deficient; and (2) counsel's deficiency prejudiced the parent. *Strickland*, 466 U.S. at 687. This court need not address both prongs of the *Strickland* test if the party does not make a sufficient showing on one. *Id.* at 697.

¶20 Counsel's performance is deficient if it fell outside the "wide range of professional competent assistance." *Id.* at 690. The prejudice prong requires establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable

---

[3] C.S. devotes much of his brief to arguing that summary judgment should rarely be granted on the "fact-intensive" issue of whether a parent is unfit due to continuing CHIPS. *See Steven V. v. Kelley H.*, 2004 WI 47, ¶36, 271 Wis. 2d 1, 678 N.W.2d 856 (explaining that "[i]n many TPR cases, the determination of parental unfitness will require the resolution of factual disputes by a court or jury at the fact-finding hearing, because the alleged grounds for unfitness involve the adjudication of parental conduct vis-à-vis the child," and listing continuing CHIPS as one such "fact-intensive" ground). However, as noted *supra*, the *Steven V.* court also observes that "[t]he propriety of summary judgment [on any ground] is determined [on a] case-by-case" basis. *Id.*, ¶37 n.4; *see also id.*, ¶44. For the reasons explained in this opinion, I conclude that the instant case is one in which summary judgment on the issue of parental unfitness is warranted.

probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** at 694.

## II. C.S. Has Not Shown That Trial Counsel Was Ineffective and Therefore Has Not Shown That the Circuit Court Erred in Granting Partial Summary Judgment or in Terminating C.S.'s Parental Rights.

¶21     As stated, C.S.'s only basis for challenging the circuit court orders granting partial summary judgment and terminating C.S.'s parental rights is his assertion that trial counsel was ineffective. At the outset, I emphasize that C.S. does not allege that his counsel was ineffective for not seeking to withdraw C.S.'s admissions during discovery or for not attempting to introduce any additional evidence in response to the County's motion for summary judgment. Rather, C.S.'s only contention is that counsel was ineffective by not arguing—based on the information in existence at the time of the summary judgment proceedings— that there are genuine issues of material fact concerning whether the County made reasonable efforts.

¶22     I further observe that C.S. does not dispute the circuit court's conclusion that the County satisfied its burden to establish a prima facie case for summary judgment, including with respect to whether the County made reasonable efforts. Instead, as stated, C.S. argues that trial counsel was ineffective for not arguing that the County's evidence was disputed by other evidence then available, such that genuine issues of material fact exist as to whether the County made reasonable efforts. *See **Brown Cnty. Human Servs. v. B.P.***, 2019 WI App 18, 386 Wis. 2d 557, ¶33, 927 N.W.2d 560 (If the moving party's submissions establish a prima facie case for summary judgment, "we then turn to the opposing party's submissions to determine whether they show material facts are in dispute such that the opposing party is entitled to a trial.").

11

¶23 Finally, I note that, although C.S. does not separately address the deficient performance and prejudice prongs of his ineffective assistance claim, his arguments go to whether counsel's performance was deficient. As to prejudice, implicit in C.S.'s ineffective assistance claim is the assumption that, had counsel made such arguments, there would have been a reasonable probability that the circuit court would not have granted partial summary judgment to the County. For the reasons explained below, I conclude that C.S. has not shown that counsel was deficient; therefore, I need not address the County's argument that C.S. failed to establish that counsel's performance prejudiced C.S. *See **Strickland***, 466 U.S. at 697.

¶24 In support of his contention that trial counsel was ineffective, C.S. makes three arguments based on evidence contained in the summary judgment materials that, according to C.S., create a factual dispute as to whether the County made reasonable efforts. I address these three arguments in turn.

A. "Implicit concession."

¶25 C.S. first relies on what he characterizes as the County's "implicit concession" in its motion for summary judgment and supporting materials that the County "made less of an effort to provide services to C.S. while he was incarcerated." C.S. notes that for approximately 30 of the 34 months between removal of E.T.S. from C.S.'s care and the filing of the County's TPR petition, C.S. was incarcerated. He further notes that during most of that time—from the October 2018 CHIPS dispositional order through the filing of the TPR petition in February 2021—the County was obligated to make reasonable efforts to provide services to C.S. pursuant to the circuit court's dispositional order.

¶26 C.S. states that the following statements in the County's motion for summary judgment establish an "implicit concession" that the County failed to make reasonable efforts to provide services to him while he was incarcerated: first, the County's statement that it provided a number of services pursuant to the dispositional order, "but that C.S. 'was unable to participate since he had only been out of incarceration for 4.5 months during the pendency of the dispositional order'"; and, second, the County's statement that "[a]ny services offered to [C.S.] while not incarcerated were not taken advantage of by [C.S.] per his own admissions."

¶27 C.S. argues that reasonable efforts from the County "had to include ensuring that C.S. received the necessary treatment and programming while he was incarcerated." His argument continues, the County "cannot simply throw up its hands" and "assert that its efforts were presumptively 'reasonable'" by relying on the fact that C.S. "spent close to two years incarcerated" and "received no treatment or services to address his AODA and mental health issues."

¶28 C.S provides no explanation, argument, or legal support for the proposition that the County has the authority or ability to require the Department of Corrections or any other non-County entity to provide AODA treatment. Thus, even assuming that C.S. is correct that the County did not provide AODA services to him while he was incarcerated, his argument on this point is undeveloped and I therefore do not consider it.[4] *See **State v. Pettit**,* 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App.1992) (we need not address undeveloped arguments).

---

[4] I note that C.S. makes no argument based on ***Kenosha County Department of Human Services v. Jodie W.***, 2006 WI 93, ¶49-50, 293 Wis. 2d 530, 716 N.W.2d 845. In ***Jodie W.***, our

(continued)

B.  C.S.'s responses to discovery.

¶29     C.S. argues that trial counsel was ineffective by failing to utilize his responses to the County's discovery requests to oppose the County's assertions that "it did everything it could" to provide services to him.  C.S. contends that counsel should have used the following three responses to the County's request for admissions to demonstrate that genuine issues of material fact exist as to whether the County made reasonable efforts:  (1) C.S.'s statement that he "engaged in all services that were offered" at the Racine Youthful Offender Correctional facility

---

supreme court held that "a parent's failure to fulfill a condition of return due to his or her incarceration, standing alone, is not a constitutional ground for finding a parent unfit" and that "a parent's incarceration is not itself a sufficient basis to terminate parental rights."  Nor would any such argument be successful, given that ***Jodie W.*** is not on point for at least the following reasons.  First, unlike in ***Jodie W.***, C.S.'s incarceration "standing alone" was not the basis for deeming C.S. unfit or terminating his parental rights.  Rather, the County's TPR petition makes clear that C.S. also did not avail himself of services while not incarcerated.

Second, the County makes clear in its summary judgment motion and supporting documents that C.S. experienced periods where he had been released from incarceration but, due to his commission of other illegal activity, was again incarcerated.  For example, as stated in the motion for summary judgment and admitted by C.S. in the request for admissions, C.S. was incarcerated from March 29, 2018, until December 19, 2019, for the conduct on March 29 that led to the CHIPS proceeding.  Upon release, on February 5, 2020, he was contacted by his probation officer regarding allegations of new criminal conduct and a warrant issued for his arrest.  He did not turn himself in but absconded until his arrest on February 19, 2020, during which he tested positive for methamphetamine.  After serving 30 days as a sanction, he was again released on March 18, 2020.  However, the next day, he was again arrested and charged with second degree recklessly endangering safety, taking and driving a motor vehicle without owner consent, and disorderly conduct, after allegedly stealing his mother's vehicle and attempting to run her over.  His extended supervision was revoked and he was again incarcerated, to serve a 16-month sentence.

Thus, it was not simply C.S.'s initial incarceration that kept him from meeting the conditions of return or that led to an unfitness determination; it was also, among other things, his continued criminal conduct and probation violations.  *See* ***Sheboygan Cnty. DH&HS v. Carolyn S.B.***, No. 2007AP2304, unpublished slip op. ¶13 (WI App Jan. 23, 2008) ("***Jodie W.*** should not be read to give an unfit parent *carte blanche* to behave in ways inimical to responsible parenting, to return oneself to jail repeatedly when parental rights hang precariously in the balance, and to then cry 'impossible to meet conditions of return.'") (internal quotation marks omitted).

"but he was not offered AODA because there was no facilitator;" (2) C.S.'s admission that he rejected information from a case worker for local AODA support meetings, including Narcotics Anonymous, because "those were good places to 'score drugs'"; and (3) C.S.'s admission to a case worker that he was "sick of the system" and the County was "not helping him get [E.T.S.] back."

¶30    C.S. has failed to show that these responses create genuine issues of material fact with respect to whether the County made reasonable efforts. As to C.S.'s first response, C.S. admitted that some services were made available to him while at the Racine facility and that he engaged in those services. To the extent that he was not provided AODA treatment while at the Racine facility because of the lack of a facilitator, C.S. fails to show how this demonstrates that the *County*— i.e., the Portage County Department of Health and Human Services— failed to make reasonable efforts to make AODA treatment available. *See id.*

¶31    C.S.'s second response, regarding programs such as Narcotics Anonymous, not only fails to create a material question of fact regarding the County's reasonable efforts, but actually supports the County's position that reasonable efforts were made. C.S.'s response shows that the County provided C.S. information about local AODA support meetings such as Narcotics Anonymous. That C.S. refused to take advantage of such treatment, allegedly due to a belief that such services "were a good place to 'score drugs,'" does not create a genuine issue of material fact as to whether the County made reasonable efforts.

¶32    Likewise, C.S.'s statements that he was "sick of the system" and that the County "was not helping him get [E.T.S.] back," do not raise genuine issues of material fact. These statements reflect C.S.'s opinions rather than a failure on the part of the County to make reasonable efforts. C.S. has not shown that trial

15

counsel was deficient in not relying on these statements to oppose the County's summary judgment motion.[5]

C. AODA Evaluation

¶33 C.S. argues that trial counsel provided ineffective assistance by failing to identify and utilize an AODA evaluation to show that the County failed to provide reasonable efforts. The evaluation, dated August 18, 2020, was provided to C.S.'s counsel during discovery. It is undisputed that the evaluation was completed for C.S. for purposes of his ongoing criminal matters, specifically, possible revocation of his extended supervision, and that the County did not facilitate the assessment. The evaluation details C.S.'s history of mental health and AODA issues and notes that C.S.'s untreated mental health issues must be addressed in order for him to progress and remain drug free. C.S. also points to the following statement from the evaluator:

> [C.S.] is now facing a period of incarceration as a result of not receiving the adequate services to address his use/misuse/abuse of mind-altering substances. Quite frankly, it is this clinician's opinion that our system has been unsuccessful in providing [C.S.] with these necessary services to address his misuse of marijuana and methamphetamine. It is evident [C.S.] was showing signs and symptoms he was spiraling out of control since 2020, a month after his release from the Wisconsin State Prison System where he did not receive any AODA treatment

---

[5] Thus, contrary to C.S.'s assertion, this case is not analogous to *Brown County Human Services v. B.P.*, 2019 WI App 18, 386 Wis. 2d 557, 927 N.W.2d 560. First, *B.P.* does not address reasonable efforts but instead addresses termination of parental rights based on abandonment. *See id.*, ¶¶31-33. Second, unlike C.S.'s vague allegations here, the mother in *B.P.* alleged very specific facts in opposition to summary judgment. Specifically, she argued that a genuine issue of material fact existed as to whether there was good cause for her not visiting her child, namely, that her lack of transportation prevented her from traveling the over 100-mile distance between her place of residence and the child's placement. *See id.*, ¶¶33, 35.

services in the 24 months he spent incarcerated, yet minimal, if any, interventions or services were offered to him other than sanctioned jail time where again no treatment services were available or offered. In fact, based on [C.S.]'s reports he was only subject to an AODA assessment and has yet to engage any AODA programming/treatment. It is unrealistic to expect [C.S.] to achieve sobriety without adequate treatment.

¶34 This excerpt, read in context, reflects the evaluator's critique of the corrections system, not of the County. Moreover, the evaluation does not mention what services the County offered to C.S., nor does it discuss C.S.'s decision not to participate in many of the services the County offered him, which C.S. admitted during discovery. The County states, and C.S. does not dispute, that the author of the report never reached out to the County to determine what services it had offered to C.S. C.S. has failed to show that counsel was deficient in failing to argue that this evaluation creates a genuine issue of material fact as to whether the County made reasonable efforts.

¶35 In sum, C.S. has not established that trial counsel was ineffective in not arguing, based on the evidence discussed above, that genuine issues of material fact exist as to whether the County made reasonable efforts. Thus, the circuit court properly denied C.S.'s motion alleging ineffective assistance of counsel. Because C.S.'s ineffective assistance claim is his sole basis for challenging the circuit court order terminating his parental rights, that order is likewise affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.